IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH J. GOMEZ<br>on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>KROLL FACTUAL DATA, INC.,<br><br>        Defendant. | Civil Action No. 8:12-cv-02773-AW |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Transfer Venue. The Court has reviewed the record and deems a hearing unnecessary. For the reasons articulated herein, the Court **GRANTS** Defendant's Motion to Transfer Venue.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Joseph J. Gomez brings this putative consumer class action against Defendant Kroll Factual Data, Inc. The putative class may "number in the hundreds or thousands." Doc. No. 1 ¶ 47. Defendant sells reports that purport to identify whether a given subject is designated on the U.S. Treasury Department, Office of Foreign Assets Control Specially Designated Nationals List ("OFAC list"). Generally, the OFAC list identifies terrorists, drug-traffickers, and other *personae non gratae*. Plaintiff alleges that Defendant failed to maintain and follow reasonable procedures to ensure the maximum possible accuracy of the information in its credit reports in violation of the Fair Credit Reporting Act ("FCRA").

1

The dispute traces to Plaintiff's application for a home loan through the Waterstone Mortgage Corporation ("WMC"). WMC requested Plaintiff's credit report from Defendant in connection with Plaintiff's loan application. The "TruAlert" section of the credit report stated that Plaintiff possibly matched "Gabriel Gomez Chavez," an OFAC list designee who was born in Mexico. Plaintiff contends, and Defendant has not disputed, that he is not Chavez and that he was not born in Mexico and has never lived there.

Plaintiff filed a Complaint on September 17, 2012. Based on the foregoing facts, Plaintiff states a sole cause of action: violation of section 1681e(b) of the FCRA. Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Defendant filed its Motion to Transfer Venue on November 30, 2012. Doc. No. 10. Defendant argues that venue in Colorado is more convenient because the dispute centers on whether it implemented and adhered to reasonable procedures in generating Plaintiff's credit report and most of the relevant evidence and witnesses are in Colorado. Defendant also asserts that the rule that the plaintiff's choice of forum usually warrants considerable weight does not apply with full force because Plaintiff has brought a putative class action.

Plaintiff opposes Defendant's Motion. Plaintiff asserts that traveling to Colorado would inconvenience him considerably. Plaintiff also asserts that OFAC and the Consumer Data Industry Association ("CDIA") are located in the District of Columbia and intimates that they have relevant evidence and/or testimony to offer. Additionally, Plaintiff downplays the fact that many of the relevant documents and data are in Colorado because, in his estimation, the Parties

2

can readily share the information electronically. Briefing on Defendant's Motion to Transfer is complete.

## II. LEGAL ANALYSIS

The federal change-of-venue statute provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Generally, in determining whether transfer is warranted, courts must consider the following factors: (1) whether the transferee court is one in which the action could have been brought initially; (2) whether transfer is convenient to the parties and witnesses; and (3) whether the transfer is in the interest of justice. *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citation omitted). Yet, as many factors inform the question whether transfer is convenient and serves the interests of justice, courts may consider the following eleven factors:

> 1) the plaintiff's choice of forum; 2) relative ease of access to sources of proof; 3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; 4) possibility of a view of the premises, if appropriate; 5) enforceability of a judgment, if one is obtained; 6) relative advantage and obstacles to a fair trial; 7) other practical problems that make a trial easy, expeditious, and inexpensive; 8) administrative difficulties of court congestion; 9) local interest in having localized controversies settled at home; 10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and 11) avoidance of unnecessary problems with conflicts of laws.

*Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 681 (D. Md. 2010) (citation omitted). Usually, the party seeking transfer must prove by a preponderance of the evidence that these factors strongly favor transfer. *See Dow*, 232 F. Supp. 2d at 499 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

In this case, Defendant alleges, and Plaintiff does not dispute, that Plaintiff could have brought the case in the District of Colorado. The Court has no reason to disagree with this conclusion. Defendant's principal place of business is Colorado and the record reflects that a substantial part of the events or omissions giving rise to the suit occurred in Colorado. Accordingly, the Court proceeds to analyze whether transfer is convenient and serves the interests of justice through the lens of the factors the *Jones* court identified.

**A.     The Plaintiff's Choice of Forum**

Plaintiff argues that, as master of his case, the Court owes his choice of forum considerable deference. Yet Plaintiff has brought this case on behalf of nationwide class of people that may "number in the hundreds or thousands." *See* Doc. No. 1 ¶ 47. Therefore, whether Maryland is a proper forum requires "consideration of its relation to the whole group of members . . . whom plaintiff volunteers to represent as well as to the nominal plaintiff himself." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525–26 (1947). Because Plaintiff brings this action on behalf of a putative class of consumers presumably scattered across the county, Plaintiff's choice of forum does not merit the usual deference.

**B.     Relative Ease of Access to Sources of Proof**

This factor considers which forum has a closer connection with the witnesses and evidence. Plaintiff argues that Maryland has a closer connection to the witnesses and evidence for the following reasons:

- WMC is located in Columbia, Maryland.

- Plaintiff's family members need to "corroborate" that he was not born in Mexico.[1]

- Maryland is much closer geographically to OFAC, which is located in the District of Columbia.

- Maryland is much closer geographically to CDIA. Plaintiff asserts, and Defendant has yet to contest, that CDIA is located in the District of Columbia. Apparently, at least in part, CDIA sets the accuracy standards for the credit reporting industry.

For its part, Defendant insists that Colorado has a closer connection with the witnesses and evidence. Defendant asserts that the individuals who developed, implemented, and monitor the systems and polices at issue are located in Colorado. Although Defendant does not name every such individual, Defendant includes affidavits[2] from the following representatives: Jennifer Byers (Senior VP); Russ Donnan (Chief Information Officer); and Shawn Ekblad (Compliance Officer). Each of the identified representatives declares that having to travel to Maryland in connection with the case would significantly inconvenience him or her.

Defendant also avers the following facts to support the assertion that Colorado is the cynosure of the case:

- Its customers (e.g., mortgage companies and banks) submit their requests for credit reports to its Colorado headquarters.

- It processes these requests by employees and equipment located in Colorado.

---

[1] The Court rejects the importance of this consideration outright. Defendant does not appear to dispute Plaintiff's assertion that he was not born in Mexico. It is exceedingly unlikely that the testimony of his relatives would be needed to prove this fact.

[2] The movant must submit "affidavits from witnesses and parties explaining the hardships [they] would suffer if the case were heard in the plaintiff's chosen forum." *Jones*, 752 F. Supp. 2d at 681 (citation and internal quotation marks omitted).

- The documentation and electronic data that these requests generate are located in Colorado. This documentation includes, but is not limited to, individual files, communications between Defendant and its customers, internal emails, and search procedures.

In light of these considerations, the Court concludes that Colorado has a much closer connection with the Parties and evidence. The essential question is whether Defendant took reasonable steps to ensure the accuracy of its credit reports. This question focuses on Defendant's policies and procedures, business practices, and relevant actions/omissions, almost all of which arise in Colorado. Likewise, the documents and data memorializing this activity are located in Colorado. Although WMC processed Plaintiff's loan application in Maryland, both the content of the application and any testimony of WMC's representatives are marginally related to the case's core issue: the reasonableness *vel non* of Defendant's procedures.

Plaintiff does not clearly contest that Colorado houses most of the evidence and identified witnesses. Rather, Plaintiff contends that almost all the records are electronic in nature and can readily be produced in any location. *Cf. Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 271 (D.D.C. 2011) (stating that the ease of access to sources of proof factor carries no weight in the transfer analysis in the digital age, particularly where both parties are sophisticated litigants with the resources to manage and exchange documents electronically). However, unlike this case, *Wyandotte* was not a putative class action that could involve thousands of class members. Due to the extraordinary volume of documentation that certification could unleash, it is unreasonable to presume that the parties will manage to seamlessly share this information electronically. Besides, *Wyandotte* is not controlling, and Defendant has identified several cases in which courts have transferred similar FCRA actions. *See, e.g.*, *Bogollagama v. Equifax Info. Servs., LLC*, Civil

Action No. 09-1201, 2009 WL 4257910 (E.D. Pa. Nov. 30, 2009); *see also* Doc. No. 11 at 7–8 (citing cases); Doc. No. 25 at 3 (citing cases).

Plaintiff notes that OFAC and CDIA are located in the District of Columbia, which is considerably closer to Maryland. But the only OFAC document at issue is the OFAC list, which is publicly available and speaks for itself. Likewise, although CDIA is presumably headquartered in the District of Columbia, Plaintiff inadequately explains whether CDIA has any relevant information. Nor does it forcibly follow that an agency's headquarters will have its applicable information. Accordingly, the "relative ease of access to sources of proof" factor strongly favors transfer to Colorado.

**C.    Availability of Compulsory Process for Attendance of Unwilling Witnesses**

Although neither Party identifies which witnesses (identified or unidentified) may be unwilling to attend trial, Plaintiff asserts that witnesses from WMC, OFAC, and CDIA are most likely to testify. However, as indicated, Plaintiff has insufficiently stated wherein the testimony of individuals from OFAC or CDIA will be necessary. Although it is arguably more likely that Plaintiff will have to elicit the testimony of a WMC representative, decidedly more potential witnesses are located in Colorado. Moreover, "non-party witness testimony can still be introduced at trial via written or videotape deposition testimony." *Bogollagama*, 2009 WL 4257910, at *4 (citation and internal quotation marks omitted); *see also Fin. Indus. Regulatory Author., Inc. v. Axis Ins. Co.*, Civil Action No. 8:12–cv–01053–AW, 2012 WL 6562777, at *2 (D. Md. Dec. 13, 2012) ("[I]t is speculative to assume that [certain nonparty witnesses] will have to be subpoenaed for trial given the early posture of the case, lack of affidavits from both nonparties, and other procedural remedies."). Therefore, howbeit slightly, this factor favors Defendant.

7

**D.    Possibility of a View of the Premises**

This factor is irrelevant to this case.

**E.    Enforceability of a Judgment**

This factor is irrelevant to this case.

**F.    Relative Advantage and Obstacles to a Fair Trial**

This factor favors neither Party. Plaintiff could argue that jurors will view him as an outsider if the Court transfers the case to Colorado. However, Defendant could make the same argument were trial held in Maryland. Moreover, the case is in federal court and the underlying action does not sound in medical malpractice, products liability, or any other area that could potentially arouse the emotions of jurors. Thus, this factor is inconsequential.

**G.    Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive**

On its face, this factor would seem to favor Defendant. After all, most of the evidence and witnesses (identified and unidentified) are in Colorado. Granted, the "relative ease of access to sources of proof" factor subsumes these considerations. Nevertheless, for similar reasons, transferring the case to Colorado may promote judicial economy. However, as Defendant has not clearly identified any "other practical problems," this factor, at most, favors Defendant only slightly.

**H.    Administrative Difficulties of Court Congestion**

This factor favors Defendant. The following chart contrasts the caseload statistics for the District of Colorado and the District of Maryland for the 12-month period ending September 30, 2012:

|  | District of Colorado | District of Maryland |
|---|---|---|
| Cases filed | 4,282 | 4,900 |
| Cases pending | 3,229 | 4,528 |
| Median time for civil case | 5.5 months | 6.6 months |
| Median time from filing to trial for civil cases | 23.6 months | 32.1 months |
| Number and (%) of cases over 3 years old | 82 (3.4%) | 121 (3.7%) |

UScourts.gov, *District Courts – September 2012*, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2011/District FCMS Profiles September 2011.pdf&page=79 (last visited Feb. 18, 2013) (select District from drop-down menu under Select a Court to View Profile heading; click "Go" button). These statistics generally indicate that the District of Maryland is more congested than the District of Colorado.

Plaintiff responds that the District of Maryland has ten judgeships, whereas the District of Colorado has seven. Plaintiff then observes that the average number of cases per judge is lower in the District of Maryland than in the District of Colorado, thereby concluding that transfer would not promote decongestion. This observation actually undercuts Plaintiff's position. If judges in the District of Colorado have fewer civil cases, and yet the median time for civil cases, median time from filing to trial, and percentage of cases over three years old are all lower, one could infer that cases are being decided more expeditiously in that jurisdiction. Therefore,

although the Court is mindful that unadorned statistics do not tell the entire tale, this factor favors transfer.

**I.       Local Interest in Having Localized Controversies Settled at Home**

This factor favors Defendant somewhat. Although Plaintiff is a Maryland resident, he has brought a class action on behalf of people spread around the country. Therefore, Maryland's interest is no greater than the interest of the states of the putative class members (which may include Colorado). By contrast, Defendant is headquartered in Colorado and, due to the nature of Plaintiff's allegations, Colorado is the epicenter of the dispute. Furthermore, Defendant's Senior VP declares, and Plaintiff has yet to contest, that Defendant has been in business for at least 25 years and employs at least three hundred people. *See* Doc. No. 11-1 ¶¶ 2, 10. Therefore, while the dispute is not "localized" per se, it has more administrative and economic implications for Colorado than Maryland.[3]

**J.       Appropriateness in Having a Trial of a Diversity Case in a Forum that Is at Home with the State Law that Must Govern the Action**

As this is not a diversity case, this factor is irrelevant.

**K.      Avoidance of Unnecessary Problems with Conflicts of Laws**

As Plaintiff concedes, this factor appears to be irrelevant to this case. Plaintiff has asserted a sole cause of action under the FCRA. There is no law—be it federal or state, procedural or substantive—with which to conflict.

***

On balance, these factors strongly militate for transfer. The "relative ease of access to sources of proof" and "administrative difficulties of court congestion" strongly counsel in favor

---

[3] Granted, WMC is located in Maryland and processed Plaintiff's loan application. However, Plaintiff has not sued WMC and the record does not reflect that its and Defendant's operations are meaningfully intertwined.

of transfer. By contrast, Plaintiff's choice of forum merits minor deference because the case is a class action. Furthermore, several other factors weigh in favor of transfer to varying degrees and the Court has identified no factor that favors Plaintiff. Therefore, Defendant has proven by a preponderance of the evidence that transfer to Colorado conveniences the parties and witnesses and serves the ends of justice.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Transfer Venue. A separate Order follows.

| February 19, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |